IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

WALTER LEE WRIGHT,

     Plaintiff,

v.                                CASE NO. 1:15-cv-189-WTH-GRJ

LAURA A. MARTIN,

     Defendant.

_____/

## **<u>REPORT AND RECOMMENDATION</u>**

This matter is before the Court on ECF No. 54, Defendant's Motion for Summary Judgment. Plaintiff has filed a response in opposition to Defendants' motion for summary judgment, ECF No. 63, and Defendant replied.[1] (ECF No. 66.) The motion is, therefore, ripe for review.

Following these filings, the Court stayed the case pending resolution of Plaintiff's appeal before the Eleventh Circuit. (ECF No. 81.) Plaintiff's appeal centers on the Court's order affirming rulings on nondispositive

---

[1] In Defendant's Reply, Defendant states that Plaintiff's response fails to properly oppose Defendant's motion for summary judgment. Defendant states that she would not oppose Plaintiff filing an amended response that actually responds to Defendant's arguments and statement of facts. (ECF No. 66.) Plaintiff, however, failed to file an amended response. Instead of amending his response, he opposed the filing of the Defendant's reply as untimely, ECF No. 70, which it was not.

pretrial matters, which affirmed the Court's orders denying Plaintiff's motion for recusal and denying Plaintiff's motion to compel. (ECF Nos. 75 & 77.) As the Court previously advised Plaintiff, in accordance with 28 U.S.C. §§ 1291–1292 Plaintiff is appealing a non-appealable order. (ECF Nos. 81 & 85.) Because the Court has jurisdiction and the motion for summary judgment is ripe for review, the Court lifts the stay in this case. For the reasons explained below, the Court recommends that Defendant's motions be granted.

## I.  INTRODUCTION

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC"), is proceeding *pro se* under 42 U.S.C. § 1983. (ECF No. 7 ("Compl.").) Plaintiff's claims against Defendant center around an incident that occurred at Cross City Correctional Institution ("CCCI") while Plaintiff was incarcerated there. (Compl.) Plaintiff alleges that Defendant violated his Eighth Amendment rights by exhibiting deliberate indifference in delaying treatment of Plaintiff's serious medical need. (*Id.* at 11.) Additionally, Plaintiff alleges that Defendant violated his First Amendment rights by retaliating against him by placing him in disciplinary confinement and taking his personal property. (*Id.* at 12.)

Defendant filed a motion for summary judgment, asserting four grounds: (1) Plaintiff cannot show that Defendant violated the Eighth Amendment, (2) Plaintiff cannot show that Defendant violated the First Amendment, (3) Defendant is entitled to qualified immunity, and (4) Plaintiff is not entitled to the damages he seeks. (ECF No. 54.)

In support of Defendant's motion, she submitted Plaintiff's internal FDOC prison movements (ECF No. 54-1); declaration of Defendant (ECF No. 54-2 ("Def. Decl.")); excerpts of Plaintiff's deposition (ECF No. 54-3 ("Pl. Depo."))[2]; and declaration of Dr. Albert Carl Maier, including Plaintiff's medical records from August 2011 to August 2012 (ECF No. 54-4).

Plaintiff thereafter filed his response in opposition to Defendant's motion for summary judgment. (ECF No. 63.) Although Plaintiff alleges that Defendant intentionally frustrated the discovery process and that Defendant submitted an affidavit in bad faith,[3] notably Plaintiff concedes

---

[2] Although only excepts from Plaintiff's deposition are included, the numbering will still reflect the page numbers indicated on the transcript for the entire deposition.

[3] Defendant addressed these allegations in her Reply. Defendant states that the grounds Plaintiff raised were essentially the same as those he raised in ECF No. 55, his motion to compel. Notably, the Court denied Plaintiff's motion to compel. (ECF No. 62.) Additionally, Defendant asserts that Plaintiff was able to inspect the documents he requested in his first request but that his second request was untimely. Defendant also stated that Plaintiff could request in writing a second opportunity to re-inspect the requested documents and that Defendant would not oppose Plaintiff filing an amended

that he did not properly show that Defendant violated his Eighth or First

Amendment rights.[4] Plaintiff did not include any attachments or exhibits

with his response. Under Fed. R. Civ. P. 56(c),

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>     (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Furthermore,

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>     (1) give an opportunity to properly support or address the fact;
>     (2) consider the fact undisputed for purposes of the motion;
>     (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>     (4) issue any other appropriate order.

---

response after an additional review of the documents. (ECF No. 66.)

[4] Specifically, Plaintiff states that Defendant "has hinder[ed] Plaintiff from properly showing that Defendant violated Plaintiff's Eighth Amendment right . . . [and] First Amendment right." (ECF No. 63 at 1–2.)

Fed. R. Civ. P. 56(e).

In this case, Plaintiff has not submitted any sworn affidavits in opposition to summary judgment.[5]  Title 28 U.S.C. § 1746 provides, however, that

> [w]herever, under any . . . rule, . . . any matter is required or permitted to be supported, evidence, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidence, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . .

Plaintiff's amended complaint is signed under penalty of perjury. (Compl.) Thus, the Court can properly treat Plaintiff's amended complaint like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not

---

[5] Plaintiff was advised that "all material facts asserted in [a] motion [for summary judgment] will be considered admitted unless controverted by proper evidentiary materials (e.g., Plaintiff's sworn counter-affidavit, other witnesses' sworn counter-affidavits, depositions, exhibits, etc.)," and that "Plaintiff may not rely solely on the allegations of the issue pleadings (e.g., complaint, answer, etc.) in opposing the summary judgment motion." (ECF No. 56.)

necessary."). The Court may, therefore, consider Plaintiff's sworn allegations in his amended complaint in ruling on the motion for summary judgment in addition to the other filings before the Court.

## II.  EVIDENCE

Plaintiff previously was incarcerated at CCCI.[6] On February 25, 2012, Plaintiff declared a medical emergency in F-dorm.  During noon count, Plaintiff informed Defendant that he had the flu and stated that he was declaring a medical emergency.[7] At this time, Plaintiff did not tell Defendant about any of his symptoms, and he did not appear to be in any observable physical distress. (Def. Decl. at 1–3.)

After Defendant finished noon count—about five minutes after she spoke with Plaintiff—Defendant contacted CCCI's control room, informing them of Plaintiff's declaration of a medical emergency and requesting a transport officer.[8] Defendant also contacted the medical department,

---

[6] Although Plaintiff was incarcerated at CCCI at the time of the alleged incident, he is currently incarcerated at Hamilton Correctional Institute. (Compl.)

[7] "A medical emergency is a potentially life threatening situation, which demands immediate action." (Def. Decl. at 2.)

[8] Based on Plaintiff's custody classification, he required a one-on-one officer escort for individual inmate movement. Defendant, however, was the only officer assigned to F-dorm that day. (Def. Decl. at 2.)

advising Nurse Valentine of Plaintiff's illness. These two steps were in compliance with FDOC's policies and procedures for housing officers such as Defendant. (Def. Decl. at 3.)

Defendant then returned to Plaintiff's cell and escorted him to the dormitory's TV room. Defendant told Plaintiff to wait there for the transport officer to escort him to medical. Defendant did not stay with Plaintiff because she was required to be in the officer's station, but she was able to observe Plaintiff in the TV room from the officer's station. (Def. Decl. at 3.)

At around 12:45 pm, the inmates in F-dorm were released for chow, the afternoon meal. Defendant was responsible for releasing the cell doors as well as the other doors to the dormitory for the inmates to go to chow. At the time the inmates were released for chow, the transport officer still had not arrived to escort Plaintiff to medical. Rather than waiting for the transport officer, Plaintiff went to medical without an escort, in violation of FDOC rules and Defendant's verbal order requiring Plaintiff to wait for the transport officer. (Def. Decl. at 3–4.)

As a result, Captain Rowell, Defendant's shift supervisor, called around 1:10 pm and instructed Defendant to issue a disciplinary report ("DR") to Plaintiff for disobeying an order. Defendant complied, and she

turned in a handwritten version of the DR to the control room later that day.[9] Plaintiff was then assigned to administrative confinement, and Defendant had no further interaction with Plaintiff. (Def. Decl. at 4–5.)

Plaintiff's version of events—as asserted in the complaint and deposition—differs from the version stated above. According to Plaintiff, on February 25, 2012, he informed Defendant that he had high blood pressure and declared a medical emergency. Plaintiff did not tell Defendant about having blackouts or any other symptoms. Defendant then left Plaintiff unsupervised for about an hour before returning to Plaintiff's cell. During that time, Plaintiff states that he was falling down inside his cell, but that Defendant did not see this. After Plaintiff left his cell with Defendant, he sat on the floor outside the officer station before Defendant told Plaintiff to sit in the TV room. (Compl. at 7; Pl. Depo. at 17–18.)

Plaintiff states that when Defendant asked him what was wrong, he responded "I told you an hour ago, I'm sick!" Plaintiff states that Defendant responded with laughter, stating "When I raise hell, I raise hell." Defendant then left Plaintiff unsupervised again. Plaintiff states that Defendant

---

[9] Defendant turned in the DR, but another person was tasked with typing up the report and entering it into the computer system. According to Defendant, the DR was not processed for reasons unknown to her. (Def. Decl. at 4.)

delayed his treatment of a serious medical need for the purpose of causing Plaintiff unnecessary pain. He stated, "She didn't cause me no physical harm. But she left me when I declared a medical emergency." Plaintiff also alleges that Defendant "acted with evil motive and malicious intent as well as deliberate indifference, callous indifference and reckless disregard for Plaintiff's constitutional rights." (Compl. at 8–9, 11; Pl. Depo. at 57.)

Plaintiff then proceeded to stumble to medical without any assistance. Between the time he declared a medical emergency and when he arrived at medical, he did not incur any additional injuries. After Plaintiff was seen by medical, he was escorted to confinement. Between the time when Plaintiff arrived at medical and when he laid down in his confinement cell, he did not fall down or incur any injuries. Once in confinement, however, Plaintiff alleges that he suffered blackouts, headaches, chills, and sweating, so he again declared a medical emergency at about 9:30 pm. A nurse evaluated Plaintiff, and his temperature was 104 degrees. A doctor then gave Plaintiff a shot and pills. Plaintiff returned to confinement, and his condition improved. Plaintiff was told later that he had the flu. (Compl. at 9; Pl. Depo. at 40–41, 52, 57.)

Plaintiff was in confinement from February 25, 2012, to March 7,

2012. (ECF No. 54-1.) In confinement, Plaintiff wrote inmate requests regarding the medical emergency and missing property. On March 13, 2012, when Plaintiff was released from confinement, he filed an informal grievance against Defendant regarding the medical emergency and for missing property. According to Plaintiff, "upon information and belief," Defendant gave another inmate his property. Plaintiff filed formal grievances on March 25, 2012. Plaintiff's grievances were denied. (Compl. at 9–10.)

Plaintiff alleges that Defendant retaliated against Plaintiff by placing him in disciplinary confinement as punishment for seeking treatment for a serious medical need. According to Plaintiff, he received the DR because he went to medical on his own, but Defendant did not tell him to wait for someone to escort him. Further, Plaintiff alleges that Defendant also retaliated against him by taking his personal property or ensuring that his property went missing. (Compl. at 12; Pl. Depo. at 81.) Yet, Plaintiff fails to provide support for these allegations or for Defendant's alleged deliberate indifference apart from his amended complaint and deposition, each of which lack any credible or verified evidence.

## III.  SUMMARY JUDGEMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v.*

*Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005).

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

The Court must view the evidence and inferences drawn from the underlying facts in the light most favorable to the non-movant. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (stating that to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff"). "The nonmovant need not be given the

benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

## IV.  DISCUSSION

Plaintiff alleges that Defendant was deliberately indifferent to his serious medical need and that Defendant retaliated against him by placing him in disciplinary confinement and taking his personal property. (Compl.) Defendant argues that Plaintiff has no claim that Defendant violated his Eighth or First Amendment rights. (ECF No. 54.) Defendant further argues that because there has been no violation of Plaintiff's rights by Defendant, she is entitled to qualified immunity. (*Id.*) Additionally, Defendant states that Plaintiff is not entitled to the damages he seeks.[10] (*Id.*)

### A.    Plaintiff has failed to prove that Defendant violated his Eighth Amendment rights.

Defendant states that Plaintiff cannot demonstrate that Defendant

---

[10] As stated below, because the Court finds that Plaintiff has failed to prove that Defendant violated his constitutional rights and because Plaintiff is entitled to qualified immunity, the Court does not find it necessary to address Defendant's argument that Plaintiff is not entitled to the damages he seeks.

was deliberately indifferent to his medical needs in violation of the Eighth

Amendment by delaying his medical emergency and requiring him to travel

to medical without an escort. (ECF No. 54 at 10–16.) The Court agrees.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held

that deliberate indifference to the serious medical needs of prisoners

violates the Eighth Amendment prohibition against cruel and unusual

punishment. To establish an Eighth Amendment violation stemming from

the deprivation of medical attention, the prisoner must set forth evidence of

an objectively serious medical need and prove that the officials acted with

attitudes of deliberate indifference to his needs.  *Farrow v. West*, 320 F.3d

1235, 1243 (11th Cir. 2003).

A claim that a prisoner has been deprived of medical attention

requires that the prisoner demonstrate "an objectively serious medical

need," which is one that is (1) so grave that, "if left unattended, poses a

substantial risk of serious harm," and (2) that the officials' response was so

inadequate as to "constitute an unnecessary and wanton infliction of pain,"

and was not "merely accidental inadequacy, negligence in diagnosis or

treatment, or even medical malpractice actionable under state law."  *Taylor*

*v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  "It is obduracy and

wantonness, not inadvertence or error in good faith, that characterize the

conduct prohibited by the Cruel and Unusual Punishments Clause . . . ."

*Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Further, a prisoner must demonstrate a "subjective intent to punish,"

by showing an attitude of "deliberate indifference," which requires showing

an "aware[ness] of facts from which the inference could be drawn that a

substantial risk of harm exists [ ] and . . . draw[ing of] the inference."

*Taylor*, 221 F.3d at 1258 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837

(1994)). In other words, a prisoner must prove four things: "an objectively

serious need, an objectively insufficient response to that need, subjective

awareness of facts signaling the need, and an actual inference of required

action from those facts." *Id.*

Plaintiff has failed to show a serious medical need based on the

severity of his condition or a delay in treatment. The Eleventh Circuit has

defined a serious medical need as (1) a "one that has been diagnosed by a

physician as mandating or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention," or (2) one

where " a delay in treating the need worsens the condition." *Mann v. Taser

Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting *Hill v. Dekalb*

*Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187–88 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Additionally, when an inmate complains specifically of a delay in medical treatment—as Plaintiff does—he must provide "medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed" in proving a constitutional violation. *Hill*, 40 F.3d at 1188.

Plaintiff's claim fails looking at either the severity of the condition or a delay in treatment. Although Plaintiff states that he complained of high blood pressure, he was later informed that he had the flu. (Comp. at 7; Pl. Depo. at 17, 57.) Some courts have concluded that the flu does not rise to the level of a serious medical need. *See Rosales v. Watts*, No. 2:15-cv-94, 2016 WL 1064578, at *7 (S.D. Ga. Mar. 15, 2016) ("His contracting an undiagnosed illness with symptoms akin to the common cold or flue simply does not rise to the level of the wanton and unnecessary infliction of pain contemplated by the Eighth Amendment."). Additionally, a delay in treating a blood pressure problem would not give rise to a claim for deliberate indifference without a showing of a detrimental effect due to the delay. *See Butler v. Prison Health Servs., Inc.*, 294 F App'x 497 (11th Cir. 2008).

Plaintiff failed to provide any medical evidence to show that the delay

in treatment had any detrimental effect. "The tolerable length of delay in

providing medical attention depends on the nature of the medical need and

the reason for the delay." *Harris v. Coweta Cty.*, 21 F.3d 388, 393–94 (11th

Cir. 1994). The medical evidence in the record provided by Defendant

evidences that there was at most a 100 minute delay from the time Plaintiff

declared a medical emergency to the time he was seen. (Ex. D at 2, 20.) A

delay of a couple hours only constitutes deliberate indifference in

circumstances requiring immediate medical attention. *See, e.g.*, *Brown v.*

*Hughes*, 894 F.2d 1533 (11th Cir. 1990); Hill, 40 F.3d at 1190; *Harris*, 21

F.3d at 394. But in contrast when the medical condition is reasonably

apparent to be a nonserious nonemergency, a delay of that duration is not

excessive absent a showing of a detrimental effect. *See Hill*, 40 F.3d at

1188–90 . The medical evidence regarding Plaintiff's treatment does not

disclose any detrimental effect due to the 100-minute delay. (Ex. D at 2.)

Further, between the time Plaintiff declared a medical emergency to the

time when Plaintiff was seen by medical, Plaintiff admits that there was no

physical injury as a result of the delay. (Pl. Depo. at 40–41, 52, 57.)

Even if Plaintiff had a serious medical need, Plaintiff has failed to

prove that Defendant acted with an attitude of deliberate indifference or

with a subjective intent to punish. Instead, the evidence shows that Defendant acted reasonably. Plaintiff had no observable symptoms according to Defendant, and Plaintiff did not disclose anything to Defendant other than that he had either high blood pressure or the flu. (Compl. at 7; Pl. Depo. at 17–18; Def. Decl. at 1–3.) Although Plaintiff stated that he had other symptoms such as headaches, blackouts, and falling down, he also stated that Defendant never observed any of these. (Pl. Depo. at 17, 52.) Plaintiff's conclusory allegation that Defendant acted with evil motive or malicious intent in delaying Plaintiff's treatment is insufficient to prove deliberate indifference or a subjective intent to punish.

Based on Plaintiff's lack of apparent distress, Defendant contacted the control room and medical, requested a transport officer to escort Plaintiff to medical, and moved him to a location where she could observe him while fulfilling her other duties. (Def. Decl. 1–3.) Because Plaintiff has failed to show that Defendant was aware of or should have been aware of a more serious and urgent need, Plaintiff cannot prove that Defendant acted with deliberate indifference in violation of the Eighth Amendment.

### B.   Plaintiff has failed to prove that Defendant violated his First Amendment rights.

Defendant also argues that Plaintiff has failed to prove that

Defendant violated his First Amendment rights by retaliating against him, which Plaintiff alleges occurred when Defendant sent him to disciplinary confinement and took his personal property. (ECF No. 54 at 16–20.) The Court agrees with Defendant here as well.

The Eleventh Circuit has established a three-part test to determine whether a Plaintiff has an actionable First Amendment claim.  The Plaintiff must establish each of the three elements:

> (1) his speech was constitutionally protected;
>
> (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and
>
> (3) there is a causal relationship between the retaliatory action and the protected speech.

*Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005); *see also Smith v. Mosley,* 532 F.3d 1270, 1276 (11th Cir. 2008).

For the first element, it "is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."  *Mosley,* 532 F.3d at 1276.  "It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such

complaints." *Id*.

The second element of the three-part test does not require that the Plaintiff himself was actually deterred from engaging in such speech, but that "a person of ordinary firmness" would be deterred from engaging in the protected speech. *Id.* To demonstrate whether the conduct would have deterred a person of ordinary firmness, Plaintiff must show more than a "de minimis inconvenience" to the exercise of his First Amendment rights. *Bennett*, 423 F.3d at 1252 (noting that it "would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how likely to deter a person of ordinary firmness from that exercise" (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

Finally, the third element asks whether the alleged retaliatory conduct would not have occurred but for the alleged retaliatory motive. *Hartman v. Moore*, 547 U.S. 250, 260 (2006). Conclusory allegations of retaliation are insufficient. *See Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) ("Appellant also produced nothing, beyond his own conclusory allegations, suggesting that [the defendant's] actions . . . were motivated by a retaliatory animus. In the absence of such evidence, summary judgment

was appropriate."). Accordingly, summary judgment is appropriate when there is no evidence of a causal connection between the allegedly retaliatory motive and the allegedly unconstitutional conduct. *Harris v. Ostrout*, 65 F.3d 912, 918 (11th Cir. 1995).

A plaintiff bears the burden of proof on all three elements. Plaintiff has failed to do so here. Applying this three-part *Bennett* test to Plaintiff's claims, it is evident that Plaintiff cannot establish a causal connection between any allegedly retaliatory motive and Defendant's conduct surrounding Plaintiff's medical emergency.

Although Plaintiff alleges that Defendant retaliated against him by sending him to disciplinary confinement, Plaintiff has offered nothing other than conclusory allegations of retaliation. While Plaintiff states that Defendant "punished" him by placing him in disciplinary confinement, Plaintiff does not provide any evidence as to why he believes Defendant punished him for seeking medical help. Instead, the evidence shows that Plaintiff was placed in disciplinary confinement for failing to obey a verbal order to wait for an escort before going to medical. (Def. Decl. at 4–5.) Additionally, Defendant was not responsible for assigning Plaintiff to disciplinary confinement; she only wrote a disciplinary report. (*Id.*)

Plaintiff also offered nothing more than conclusory allegations to support his claim that Defendant retaliated against him by taking his personal property. Plaintiff specifically stated that his claim was based on "information and belief." (Compl. at 9–10.) Plaintiff did not elaborate on what constituted this "information," and belief is insufficient to support a claim for retaliation. Plaintiff also failed to prove that the loss of personal property would deter a reasonable person from seeking medical help in the case of a medical emergency. Accordingly, Plaintiff has failed to prove any First Amendment violation.

### C.    Qualified Immunity

Defendant also asserts that she is entitled to qualified immunity with regard to Plaintiff's claims. (ECF No. 54 at 20–21.) The Court agrees.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies to a government official performing a discretionary function, a court must consider two factors: (1) whether the evidence shows that the official's

conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A court has the discretion to address the two prongs in either order. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The undisputed evidence here demonstrates that Defendant was a government official acting within her discretionary authority. Defendant was an employee at CCCI at the time of the incident and thus a government official. (Def. Decl.) "Discretionary authority" includes all actions by a government official that "were undertaken pursuant to the performance of his duties," and were "within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). Defendant was acting pursuant to her duties and within the scope of her authority in following the appropriate procedures when Plaintiff declared a medical emergency and in writing a disciplinary report when Plaintiff disobeyed her order. (Def. Decl.) Consequently, Defendant is entitled to qualified immunity unless Plaintiff can demonstrate

that Defendant violated clearly established constitutional rights of which a reasonable person would have known.

Although Plaintiff claims that Defendant violated his Eighth and First Amendment rights through deliberate indifference and retaliation, for the reasons discussed above Plaintiff failed to show that Defendant violated any of his constitutional rights. Because Defendant acted within her discretionary authority and did not violate any of Plaintiff's rights, Defendant is entitled to qualified immunity.

## V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant's Motion for Summary Judgment, ECF No. 54, should be **GRANTED.**

**IN CHAMBERS** this 13th day of February 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections**

shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.